IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | Case. No. 1:24-cv-00456 |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | **JURY TRIAL DEMAND** |
| PEPSICO BEVERAGE SALES, LLC. ) | |
| d/b/a PEPSICO BEVERAGE ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended, ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability, and to provide appropriate relief to Clifford Rau ("Mr. Rau") who was adversely affected by such practices. As pled with greater particularity below, Plaintiff Equal Employment Opportunity Commission ("Commission") alleges that PepsiCo Beverage Sales, LLC d/b/a PepsiCo Beverage Company, ("PepsiCo" or "Defendant") failed to provide Mr. Rau with a reasonable accommodation for his disability and took adverse employment action against him because of his disability in violation of the ADA, 42 U.S.C. § 12101, et seq.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1337, 1343, and 1345.

2. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## PARTIES

4. The Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e5(f)(1).

5. Defendant, a Delaware limited liability company, operates a facility in the State of North Carolina, specifically in the City of Winston-Salem.

6. At all relevant times, Defendant has continuously done business in the State of North Carolina and in the City of Winston-Salem and has continuously had at least fifteen (15) employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and (7) of the ADA, 42 U.S.C. §§ 12111(5) and (7), which incorporate by reference Sections 701(g) and (h) of Title VII,

42 U.S.C. §§ 2000e(g) and (h).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## **ADMINISTRATIVE PROCEDURES**

9. More than thirty (30) days prior to the institution of this lawsuit, Mr. Rau filed a charge with the Commission alleging violations of the ADA by Defendant.

10. Defendant responded to Mr. Rau's charge and participated in all aspects of the Commission's administrative investigation.

11. By letter dated April 14, 2023, the Commission notified Defendant that the Commission has reasonable cause to believe that Defendant violated the ADA. The Commission invited Defendant to participate in informal methods of conciliation in an attempt to eliminate the unlawful employment practices and secure appropriate relief.

12. The Parties engaged in conciliation but were not able to reach an agreement acceptable to the Commission.

13. By letter dated March 11, 2024, the Commission notified Defendant that conciliation efforts had failed.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **STATEMENT OF CLAIMS**

15. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 14 above.

16. Mr. Rau is a qualified individual with a disability under 42 U.S.C. §§ 12102

and 12111(8).

17. Mr. Rau is blind. His visual impairment substantially limits him in the major life activity of seeing and in the use of special sense organs, his eyes.

18. On or about April 21, 2022, Defendant hired Mr. Rau for a Customer Care Advocate ("CCA") position at a PepsiCo call center located in Winston-Salem, North Carolina.

19. Defendant gave Mr. Rau a start date of May 16, 2022.

20. Mr. Rau passed all preemployment screenings, including a drug test.

21. The CCA position is performed at Defendant's Winston-Salem call center. The duties of a CCA include speaking with customers, taking service orders over the phone and digitally, entering orders into Defendant's proprietary software system, diagnosing soda fountain issues, and dispatching equipment or services to customer locations.

22. On or before May 9, 2022, Mr. Rau notified Defendant's Human Resource Coordinator that he was blind and requested a reasonable accommodation that would allow him to perform the essential functions of the CCA position.

23. On or before May 9, 2022, Mr. Rau notified Defendant that screen reading software was available that would allow Mr. Rau to answer and respond to customer calls.

24. On or about May 9, 2022, Mr. Rau referred Defendant to his vocational counselor, ("Counselor"), at the North Carolina Department of Health and Human Services ("NCDHHS") and explained that NCDHHS could help Defendant with the use and implementation of assistive technology, including screen reading software.

25. NCDHHS offers free services to employers, including helping them identify potential accommodations and assisting with securing necessary equipment, including by providing technical and financial assistance.

26. Between May, June, and July 2022, the NCDHHS Counselor repeatedly offered to assist Defendant to identify and implement a reasonable accommodation that would have allowed Mr. Rau to perform the essential functions of the CCA position.

27. For example, the Counselor offered to conduct an assistive technology assessment of Defendant's computer systems and offered to purchase a laptop, screen reader, and other technology as needed to accommodate Mr. Rau.

28. Defendant rejected the offer from the Counselor, stating that the accommodations had to be handled internally.

29. On or about July 20, 2022, Defendant informed Mr. Rau that it had tested two screen reading software products, Job Awareness with Speech (JAWS) and Non-Visual Desktop Access (NVDA) and found that three of twelve programs within Defendant's proprietary software system were incompatible with the screen readers.

30. Defendant represented that the architecture and age of Defendant's software was the reason for this incompatibility.

31. On or about July 28, 2022, Mr. Rau met with two of Defendant's human resource representatives via a Zoom meeting.

32. In the meeting, Defendant stated that only 250 of its 300,000 employees use Defendant's Customer Equipment Tracking System (CETS).

33. Defendant stated that it planned to replace CETS at this Winston-Salem location with non-proprietary, cloud-based software in 2025. Defendant stated the replacement software would be compatible with screen reading technology.

34. Defendant stated that an attempt to rebuild the existing software, CETS, to be compatible with screen reading technology would take at least one year and cost between $500,000 and $1,000,000.

35. Upon information and belief, the cost estimates provided by Defendant were not based on hard data but rather speculation.

36. Upon information and belief, Defendant has a reported operating budget of approximately $75 billion dollars.

37. In a July 28, 2022, Zoom meeting, Defendant stated that it had looked for other jobs for Mr. Rau but could not find anything that did not require use of the CETS system or was otherwise suitable for Mr. Rau.

38. In that same meeting, Defendant stated that timing was not "congruent" between Mr. Rau's employment and the anticipated rollout of the new software in 2025.

39. Upon information and belief, Defendant did not consider or offer any other possible job modifications or accommodations that would have allowed Mr. Rau to perform the essential functions of the CCA position.

## COUNT I:

*Violation of the ADA*
*Failure to Make Reasonable Accommodation*

40. The Commission realleges and incorporates by reference the allegations set

forth in paragraphs 1 through 39 above.

41. From around May 2022 to the present, Defendant engaged in and continues to engage in unlawful employment practices at its Winston-Salem, North Carolina facility in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a), by failing to provide a reasonable accommodation for Mr. Rau, a qualified individual with a disability under Section 101(8) of the ADA, 42 U.S.C. § 12102 and 12111(8), and other individuals with visual impairments.

42. Mr. Rau has an impairment, blindness, that substantially limits the major life activity of seeing and in the use of special sense organs, his eyes.

43. Defendant had notice of Mr. Rau's disability and his need for a reasonable accommodation.

44. Mr. Rau requested the use of a screen reader accommodation, and he could have performed the essential functions of the CCA position with the accommodation.

45. Mr. Rau's accommodation request was reasonable.

46. Granting Mr. Rau use of screen reading technology would not have created an undue hardship for Defendant.

47. Upon information and belief, other reasonable accommodations were available that could have allowed Mr. Rau to perform the essential functions of the job.

48. Defendant refused to provide reasonable accommodations for Mr. Rau.

49. Defendant's refusal to make a reasonable accommodation for Mr. Rau's disability violates the ADA.

50. The practices complained of above have deprived Mr. Rau of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability or his record of a disability.

51. The practices complained of above created significant financial hardship and emotional distress for Mr. Rau, causing mental anguish, humiliation, and despair.

52. The unlawful employment practices complained of above were intentional.

53. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Mr. Rau.

## COUNT II:

### *Violation of the ADA*
### *Unlawful Discharge Based on Disability*

54. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 above.

55. Mr. Rau has a visual impairment that affects the major life activity of seeing.

56. Mr. Rau was qualified to perform the CCA position with or without a reasonable accommodation.

57. At the time Defendant terminated Mr. Rau's employment, he was meeting the legitimate expectations of Defendant.

58. Defendant terminated Mr. Rau's employment because it would not accommodate him.

59. Defendant terminated Mr. Rau's employment because of his disability.

60. The practices complained of have deprived Mr. Rau of equal employment

opportunities and have otherwise adversely affected his status as an employee because of his disability or record of his disability.

61. The practices complained of have deprived Mr. Rau of equal employment opportunities and have otherwise adversely affected his status as an employee because Defendants regarded Mr. Rau as having a disability.

62. The practices complained of created significant financial hardship as well as emotional and physical distress for Mr. Rau, including mental anguish.

63. The unlawful employment practices complained of above were intentional.

64. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Mr. Rau.

## COUNT III:

*Violation of the ADA*
*Unlawful Failure to Hire Based on Disability (In the Alternative)*

65. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 64 above.

66. Mr. Rau applied for the CCA position.

67. Mr. Rau was qualified to perform the CCA position.

68. Defendant set a start date for Mr. Rau to begin the position as a CCA.

69. Mr. Rau could have performed the essential functions of the CCA position with the reasonable accommodation of a screen reader, or with other alternative reasonable accommodations.

70. Defendant did not accept NCDHHS' offer to help identify solutions to

accommodating Mr. Rau.

71. After learning of Mr. Rau's need for an accommodation, Defendant rejected Mr. Rau for the CCA position.

72. Defendant failed to hire Mr. Rau because of his disability.

73. The practices complained of have deprived Mr. Rau of equal employment opportunities and have otherwise adversely affected his status as an employee because of his disability.

74. The practices complained of created significant financial hardship as well as emotional and physical distress for Mr. Rau, including mental anguish.

75. The unlawful employment practices complained of above were intentional.

76. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Mr. Rau.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on a disability, including failing to accommodate an individual with a disability and discharging an employee because of a disability or failing to hire an individual because of a disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled persons, including providing

reasonable accommodations where available, which eradicate the effects of past and present unlawful employment practices.

C.      Order Defendant to make Clifford Rau whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, reinstatement or front pay in lieu of reinstatement.

D.      Order Defendant to make Clifford Rau whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.      Order Defendant to make Clifford Rau whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

F.      Order Defendant to pay to Clifford Rau punitive damages for its willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

G.      Grant such further relief as necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint. Respectfully submitted this 31st day of May, 2024.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M Street, NE
Washington, D.C. 20507


MELINDA C. DUGAS
Regional Attorney

YLDA M. KOPKA
Supervisory Trial Attorney

/s/ *Nicholas Wolfmeyer*
NICHOLAS WOLFMEYER
Trial Attorney
Florida State Bar No. 127218
129 West Trade Street, Suite 400
Charlotte, NC 28202
Telephone: (704) 909-5623
Facsimile: (704) 954-6412
Email: nicholas.wolfmeyer@eeoc.gov